IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADAM CHRISTOPHER,

                          OPINION AND ORDER

            Plaintiff,

                          18-cv-944-bbc

    v.

DR. LILY LIU,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Adam Christopher is proceeding on claims that defendant Dr. Lily Liu, a physician at Jackson Correctional Institution, violated his rights under the Eighth Amendment and state law by failing to provide him adequate medical treatment for his back pain, fatigue and gastrointestinal problems. Defendant is represented by private counsel. Now before the court is defendant's motion for summary judgment, dkt. #138, and several discovery-related motions filed by plaintiff. Dkt. #112; dkt. #144; dkt. #150. For the reasons below, I am granting defendant's motion for summary judgment and denying plaintiff's motions for additional discovery.

      From the parties' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

      Plaintiff Adam Christopher was transferred to Jackson Correctional Institution in 2016. At some point during 2016, plaintiff sought treatment from the health services unit

for back pain, gastrointestinal problems and fatigue. In February 2017, a prison doctor prescribed docusate sodium, a stool softener, to plaintiff. Dkt. #155-4. The docusate prescription was renewed in April and May 2017, but the docusate was not effective for plaintiff's symptoms and he stopped taking it. Plaintiff was also experiencing diarrhea, hemorrhoids, fissures and pain, which he attributed to the docusate. In April 2017, plaintiff was prescribed senna glycoside, another medication for constipation, and in May 2017, he was prescribed Reguloid, a fiber laxative. Id. A prison doctor noted that plaintiff might have irritable bowel syndrome, which is a common disorder that, at times, can cause symptoms such as cramping, abdominal pain, gas and constipation. Reguloid is one treatment for constipation caused by irritable bowel syndrome.

In November 2017, a prison doctor prescribed acetaminophen and Meloxicam, a nonsteroidal anti-inflammatory drug, for plaintiff's back pain, and referred plaintiff to physical therapy in December 2017. Dkt. #155-8. Plaintiff met with a physical therapist in March 2018. Dkt. #155-9 at 7. He received a TENS unit in April 2018. Dkt. #155-7 at 3.

On April 23, 2018, plaintiff saw a nurse for complaints about irritable bowel syndrome, fatigue, back pain and allergies. Dkt. #155-2. According to the nurse's notes, plaintiff reported that he had abdominal pain and cramping, that his stools were firm and hard, that he had external hemorrhoids and that he often felt tired after having a full night's sleep. At the time, plaintiff was taking Reguloid, a fiber supplement, had a TENS unit for his back and had received exercises to perform from the physical therapist earlier that day.

The nurse scheduled plaintiff to be seen by an advanced care provider.

Plaintiff saw defendant Dr. Lily Liu on May 9, 2018. Plaintiff told defendant that he was having abdominal pain and irritable bowel syndrome. (Plaintiff says that he also told defendant that he had back pain and fatigue, but that defendant told plaintiff that he had to pick one problem to be treated. Defendant denies that plaintiff complained about fatigue and back pain and denies that she told plaintiff that he had to pick only one problem.) Defendant's notes from the visit state that plaintiff reported being unable to have a normal bowel movement, that his stool was hard and dry and that it felt like there was a narrowing in the suprapubic region of his colon. (Plaintiff says that he also told defendant that he was having recurring diarrhea.) Defendant conducted an abdominal examination of plaintiff, and noted that he had mild tenderness in the lower left quadrant. Defendant also performed a rectal examination, which was normal, without any sign of fissures, masses or blood present. (Plaintiff says that he did have fissures, but he cites no evidence to support his assertion.) Defendant concluded that plaintiff's symptoms were consistent with constipation. At the time, plaintiff was still taking Reguloid, the fiber supplement, but he was not taking a stool softener. Defendant prescribed Colace, a docusate sodium stool softener that is a common treatment for patients with constipation. Defendant also ordered a metabolic panel and blood test for plaintiff, and a follow-up appointment in two weeks.

Plaintiff was frustrated that defendant prescribed Colace, because the same medication had not helped his gastrointestinal problems in 2017 and it had made him sick. He submitted a health service request on May 13, 2018, stating that he had taken Colace

3

for months in 2017, that it gave him diarrhea several times a day and that it caused him hemorrhoids, fissures and pain. Health services responded that plaintiff was scheduled to have a follow-up appointment with defendant, and that plaintiff needed to give the medication time to work.

On May 22, 2018, plaintiff saw defendant for a follow-up appointment for constipation and elevated blood pressure and to review the lab work that had been taken. At that appointment, plaintiff stated that his stools were soft and pencil thin and that it felt like there was a blockage in his suprapubic area. Plaintiff did not complain to defendant of blood or diarrhea. (Plaintiff says he complained to other medical staff about rectal bleeding and diarrhea, but he has not submitted evidence refuting defendant's assertion that plaintiff did not complain of bleeding or diarrhea on May 22.) Defendant ordered a an abdominal x-ray to check for a potential blockage. Defendant wrote in her notes that she would consider ordering a colonoscopy, depending on the x-ray results. (Defendant also provided treatment for plaintiff's high blood pressure and anxiety at this appointment.) Defendant scheduled a follow-up appointment for one month.

Plaintiff received the abdominal x-ray on May 30, 2018. The x-ray results were essentially normal, showing some modest colonic stool, but no obstruction or masses. Defendant concluded that the results were consistent with constipation, and that a colonoscopy was not warranted at that time. In July 2018, the health services unit discontinued plaintiff's Colace prescription because he was not taking the medication.

Plaintiff saw defendant again on August 3, 2018, with complaints of chronic back

pain, bowel and bladder dysfunction and chronic fatigue. Plaintiff denied rectal bleeding or hematuria. He also reported that he had good control of his bowel movements as long as he took regular doses of Reguloid. Defendant conducted a physical examination, which showed tenderness in the suprapubic region. Defendant also examined plaintiff's back, and found tenderness over the SI joint. Defendant ordered a CT scan of plaintiff's abdomen and pelvis, renewed plaintiff's Reguloid prescription and ordered that plaintiff be seen by a orthopedist and physical therapist. Defendant noted that she would consider a colonoscopy, depending on the results of the CT scan. (Plaintiff says that defendant told him that she would order a colonoscopy, but defendant denies telling him this. Plaintiff also says that defendant sent him to see a physician's assistant about his back, but he cites no evidence to support this assertion.)

Plaintiff received a CT scan of his abdomen and pelvis on August 17, 2018, at Black River Memorial Hospital. The results were negative for bowel obstruction, bowel wall thickening, inflammatory changes or lesions.

In October 2018, defendant noted in plaintiff's medical records that plaintiff had chronic back pain. In November 2018, defendant noted that plaintiff had irritable bowel syndrome. In November 2018, plaintiff asked defendant if he could have an alternative medication to treat his irritable bowel syndrome. (Plaintiff says that defendant told him that the medication he requested was too expensive and that the Department of Corrections would not approve it. Defendant denies telling plaintiff that a medication was too expensive.)

(Plaintiff says that in August or November 2018, defendant reduced his acetaminophen prescription by half without any replacement medication or therapy for his back pain. However, the evidence does not support this assertion. The evidence shows that in the fall of 2018, the health services unit converted to electronic medical records. In the process, any prescriptions dosages that stated "1 or 2 pills" were changed to either "1 pill" or "2 pills." Plaintiff's acetaminophen prescription was changed from "1 or 2 pills" to "1 pill," but defendant did not make the change. The change was made by health services staff responsible for converting the electronic records.)

Sometime between October and December 2018, plaintiff had a colonoscopy and an appointment with an outside neuroscience specialist for his back. The colonoscopy showed mild colon diverticulosis, and it was recommended that plaintiff continue with a high fiber diet. The back specialist gave plaintiff a diagnosis of disc disease, and recommended that plaintiff receive a lumbar epidural steroid injection and muscle relaxer. (Plaintiff also submitted evidence showing that he met with a back specialist in September 2019, who concluded that plaintiff had "mechanical low back pain with disk disease at L4-5 and L5-S1." The specialist noted that plaintiff's problems could not be corrected surgically, and should be addressed through physical or chiropractic therapy, changing positions frequently and using extra pillows while sleeping. Dkt. #137-1.)

OPINION

Plaintiff contends that defendant failed to treat his numerous health problems

6

adequately, in violation of the Eighth Amendment and state negligence law.

## A. Eighth Amendment

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). To prevail on a claim based on deficient medical care, the plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011). The first element, an objectively serious medical condition, is satisfied if a physician has determined that the condition requires treatment, or the need for treatment would be obvious to a layperson. Pyles, 771 F.3d at 409. There is no dispute in this case that plaintiff's gastrointestinal problems, back problems and fatigue were serious medical conditions that required treatment.

There is a dispute about the second element of plaintiff's claim, "deliberate indifference," which is a subjective standard. Arnett, 658 F.3d at 751. "Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). In cases in which a prisoner alleges that he received some treatment for his medical condition, but the treatment was

inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id. But a medical provider may violate the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or that the providers knows will be ineffective. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662–63 (7th Cir. 2016).

Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in "a course of treatment known to be ineffective," or proof that the defendant's treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment. Id. A medical professional's choice to pursue an "easier and less efficacious treatment" or "a non-trivial delay in treating serious pain" may also support a claim of deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citation omitted).

Plaintiff contends that defendant acted with deliberate indifference to his serious medical needs by persisting in ineffective treatment for his gastrointestinal problems, failing to provide him treatment for his back pain and ignoring his complaints of fatigue. However, the undisputed facts do not support plaintiff's claims. Instead, the facts show that defendant responded to plaintiff's complaints by evaluating his subjective symptoms and by ordering objective tests to determine an appropriate treatment.

With respect to plaintiff's complaints of gastrointestinal problems, defendant performed physical examinations, prescribed medication and ordered lab work, an abdominal x-ray and a CT scan, all within six months of plaintiff's initial appointment with defendant. Ultimately, plaintiff received a colonoscopy as well. Defendant's actions show that she exercised her medical judgment in determining how to treat plaintiff's symptoms. They do not support a finding of deliberate indifference.

Plaintiff contends that defendant should not have prescribed Colace, because docusate sodium had been ineffective the previous year and had caused him diarrhea and other side-effects. However, plaintiff has submitted no evidence to undermine defendant's assertion that she thought it was appropriate to try Colace again for plaintiff's symptoms. Plaintiff also contends that defendant should have ordered a colonoscopy sooner and should have prescribed a different medication specific to irritable bowel syndrome. Again, however, plaintiff has submitted no evidence to support these arguments. In particular, he has not shown that defendant's decision to to treat him with Reguloid and Colace and to order lab tests, an abdominal x-ray and a CT scan, before ordering a colonoscopy or trying different

9

medications, fell outside the bounds of accepted medical judgment. Nor has plaintiff shown that ordering a colonoscopy sooner would have changed defendant's assessment or treatment decisions in any event. Therefore, plaintiff has not shown that defendant acted with deliberate indifference to plaintiff's gastrointestinal problems.

Plaintiff also has not shown that defendant disregarded his back pain. Plaintiff contends that defendant refused to treat his back pain at his initial appointments with her in May 2018. Defendant denies that plaintiff complained about his back at these appointments, but the parties' dispute is immaterial. Even accepting plaintiff's version of events as true, plaintiff has not shown that defendant was deliberately indifferent. In April 2018, shortly before his appointments with defendant, plaintiff had received a TENS unit and exercise instructions for his back from a physical therapist. He was taking acetaminophen and Meloxicam for his back pain. In short, plaintiff was already receiving treatment for his back. Although he says his back was still hurting, defendant could have reasonably expected plaintiff to use his physical therapy exercises and the pain medication and TENS unit that had been provided to him before considering alternative or additional treatment for his back pain. Plaintiff did not complain to defendant about his back pain again until August 2018. At that time, defendant examined plaintiff's back and referred him to an orthopedist and physical therapist. No reasonable jury could conclude that defendant acted with deliberate indifference to plaintiff's back pain.

Finally, plaintiff contends that defendant ignored his complaints about fatigue. Defendant says she cannot recall plaintiff's complaining to her about fatigue, and

defendant's notes do not discuss fatigue. However, even assuming that plaintiff complained to defendant about fatigue, he has not submitted evidence from which a reasonably jury could conclude that defendant's failure to prescribe a specific treatment for the fatigue amounted to deliberate indifference. At the time plaintiff says he complained to defendant about fatigue, he was being treated for multiple health problems, including gastrointestinal distress, back pain, hypertension, anxiety and depression. He was also treated by multiple health professionals, including nurses, physicians and psychiatrists. It is not clear whether plaintiff's fatigue was caused by one of his known medical problems or something else. However, the evidence in the record shows that defendant was aware of plaintiff's multiple medical problems, that she ordered lab work to assess plaintiff for diseases or other potential causes of his symptoms and that she prescribed various forms of treatment for his problems based on her own examinations and objective test results. On this record, no reasonable jury could conclude that defendant was deliberately indifferent to any of plaintiff's serious medical needs.

## B. Negligence

To prevail on a claim for negligence in Wisconsin, plaintiff must prove that defendant breached her duty of care and that he suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Wisconsin law more specifically defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs,

11

acting in the same or similar circumstances." Sawyer v. Midelfort, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); Shuster v. Altenberg, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). To succeed on his claims against defendant, plaintiff has to show that defendant failed to use the required degree of skill exercised by an average doctor under the circumstances, that he suffered harm, and that there is a causal connection between defendant's failures and his harm. Wis J–I Civil 1023. Expert testimony is required to establish the standard of care, unless "the situation is one in which common knowledge affords a basis for finding negligence." Sheahan v. Suliene, Case No. 12-cv-433-bbc, 2014 WL 1233700, at *9 (W.D. Wis. 2014).

Plaintiff cannot succeed on his negligence claim against defendant for the same reasons that he cannot succeed on his Eighth Amendment claim. Plaintiff has not submitted evidence showing that defendant's treatment decisions fell below the standard of care for a prison doctor under the circumstances, or even that any reasonably doctor would have made different treatment decisions. Therefore, no reasonable jury could conclude that defendant was negligent in treating plaintiff.

### C. Plaintiff's Discovery Motions

Plaintiff has filed three discovery motions that remain outstanding. First, he filed a motion to compel defendant to respond to requests for admissions, interrogatories, production of documents and an omnibus request directed to the Department of

Corrections. Dkt. #112. I will deny this motion. The parties' filings show that defendant has now responded to the requests for admissions, and I agree with defendant that she had no obligation to respond to a discovery request directed to the Department of Corrections, as she is not a Department of Corrections employee. As for the remaining requests in the motion, defendant has either provided adequate responses, or plaintiff's requests are ultimately irrelevant to the outcome of defendant's summary judgment motion.

For example, plaintiff requested all documents "substantiating a defense" to plaintiff's claim. Dkt. #130 at 2. Defendant reasonably objected to this request as vague and overly broad. But even if defendant had not objected, it is clear from defendant's summary judgment materials that defendant relied solely on plaintiff's medical records to defend plaintiff's claim. Plaintiff has had access to the medical records on which defendant relied. The Department of Justice provided plaintiff copies of 581 pages of his medical records, dkt. #47, and plaintiff can request review of his medical files from prison staff.

Plaintiff contends that he has not had access to all of the documents he needs, including medical documents that were created, or should have been created, after October 2018. He also wants copies of documents showing when his offsite medical appointments were scheduled and by whom, and the costs of his offsite medical appointments. However, plaintiff has not shown that these documents are relevant to his claim that defendant failed to provide him adequate medical treatment between May and October 2018, and I am not persuaded that this information would affect the outcome of defendant's summary judgment motion.

In his second discovery motion, plaintiff seeks to compel defendant to respond to requests for admissions related to high blood pressure and to respond to an interrogatory explaining why, in her medical opinion, 22 different interventions were inappropriate for plaintiff's back pain. Dkt. #144. I will deny this motion as well. Plaintiff cannot defeat defendant's motion for summary judgment by showing that defendant's treatment decisions had the potential to aggravate his blood pressure or that there were other treatments for back pain that defendant could have considered. Plaintiff was required to show that defendant failed to use any medical judgment or that her treatment decisions fell below the standard of care for a reasonable prison doctor. Requiring defendant to respond to plaintiff's blood pressure questions or the compound interrogatory about potential back treatments would not provide plaintiff the evidence he needed to defeat summary judgment.

Finally, plaintiff filed a motion requesting issuance of subpoena for documents from the Department of Corrections relating to his appointment with defendant on May 9, 2018. Dkt. #150. It is not clear why plaintiff thinks that there are additional documents related to this appointment that are not contained in his prison medical file. Plaintiff apparently wants to show that defendant was told by health services to address plaintiff's multiple medical problems at the May 9 appointment, and not just his complaints of gastrointestinal distress. However, as discussed above, even if I accept plaintiff's description of the May 9 appointment, he has failed to show that defendant was deliberately indifferent to his serious medical needs. Therefore, I will deny this motion as well.

ORDER

IT IS ORDERED that

1. Plaintiff Adam Christopher's motions to compel, dkt. #112 and dkt. #144, and motion for a subpoena, dkt. #150, are DENIED.

2. Defendant Dr. Lily Liu's motion for summary judgment, dkt. #138, is GRANTED.

3. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 28th day of May, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge